# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-00345-SCT

*RHEUVONIA BUCK*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES L. PENLEY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CHARLES W. MARIS |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 2/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     We granted certiorari in this post-conviction relief case to address the issue of whether Rheuvonia Buck's drug case was properly transferred from youth court to circuit court. The Court of Appeals affirmed the Warren County Circuit Court's denial of Buck's motion for post-conviction relief. Finding that Buck's case was improperly transferred, we reverse and remand. However, we affirm the Court of Appeals' finding of no ineffective assistance of counsel by Buck's previous representatives.

## FACTS AND PROCEDURAL HISTORY

¶2.     Rheuvonia Buck was arrested for two counts of sale of cocaine to an undercover informant.  At the time, she was sixteen years old.  At another proceeding in Warren County Youth Court involving other members of her family, Buck and her mother requested that she be certified as an adult.  The following exchange took place before the youth court:

> Mr. Bonner [Buck's attorney]: Your Honor, this is R.B., who has been charged with the sale of cocaine.  She is a child from this household, but she is not listed in this petition.  She's before this Court to be certified as an adult today, and I was going to point out to the Court, that she's not a party to this particular cause number.
>
> The Court: All right.  Do you have any objection to her being certified as an adult?
>
> Mr. Bonner: Your Honor, I have advised her not to seek certification.  She has indicated and her mother has indicated to me that it is her wish to be certified as an adult against my advice and best wishes, but that's what she wants to do.
>
> * * *
>
> The Court: You understand what you're doing?  You've been explained this?
>
> R.B.: Yes, sir.
>
> The Court: You've been to training school before, haven't you?
>
> R.B.: Yes, sir.
>
> The Court: How many times?
> R.B.: Two.

The youth court thereafter accepted Buck's request to be certified as an adult, ordered her confined in an adult facility, and imposed a $25,000 bond.

¶3.     In circuit court and with different counsel, Buck entered an open plea to one count of sale of cocaine; the second count having been dismissed by the State. The court informed Buck that she was entering an open plea and that he could give her the maximum sentence. After an exhaustive inquiry to determine Buck's understanding of what she was doing and being satisfied that she did understand, the court sentenced her to ten years' imprisonment, with five years suspended.

¶4.     On October 11, 2000, Buck filed a motion for post-conviction relief. She was represented by yet another attorney. The motion argued a failure of statutory procedure since no motion to transfer had been filed, neither she nor her mother understood the ramifications of being transferred, the youth court failed to find no reasonable prospects of rehabilitation within the juvenile justice system, and ineffective assistance of counsel. The circuit court denied Buck's motion, finding that Buck's guilty plea had been voluntary and that the youth court had substantially complied with statutory requirements before allowing transfer to circuit court.

¶5.     Buck appealed, and a divided Court of Appeals affirmed, finding no ineffective assistance of counsel, but not addressing the assigned error of the youth court's failure to follow statutory requirements for transfer of a case. *Buck v. State*, 2002 WL 1278063 (Miss. Ct. App. 2002). Presiding Judge Southwick dissented without opinion. Three additional judges, Presiding Judge King and Judges Lee and Irving, dissented, stating that Buck's counsel's raising the issue of transfer to circuit court was constitutionally ineffective assistance of counsel that was "akin to a confession of guilt. . . ." *Id.* at *4. We granted

certiorari thereafter. Since the issue of transfer is, in our opinion, central to the resolution of this case, we will address it.

## STANDARD OF REVIEW

¶6. In reviewing a trial court's decision to deny a defendant's petition for post-conviction relief, we will not disturb the court's findings of fact unless clearly erroneous; however, we apply the de novo standard to questions of law. *Harris v. State*, 757 So. 2d 195, 197 (Miss. 2000); *Pickett v. State*, 751 So. 2d 1031, 1032 (Miss. 1999).

## DISCUSSION

### I. WHETHER JURISDICTION WAS PROPERLY TRANSFERRED FROM YOUTH COURT TO CIRCUIT COURT.

¶7. Buck argues that the Warren County Youth Court's improper transfer of jurisdiction under Miss. Code Ann. § 43-21-157 (2000) failed to confer authority in the circuit court to act in her case. The State responds that, while procedurally irregular, the transfer order was sufficient to transfer jurisdiction to circuit court.

¶8. Section 43-21-157 establishes an elaborate procedure to be followed in transferring jurisdiction from youth court to another court and states in pertinent part:

> (1) If a child who has reached his thirteenth birthday is charged by petition to be a delinquent child, *the youth court, either on motion of the youth court prosecutor or on the youth court's own motion, after a hearing as hereinafter provided, may, in its discretion, transfer jurisdiction* of the alleged offense described in the petition or a lesser included offense to the criminal court which would have trial jurisdiction of such offense if committed by an adult. The child shall be represented by counsel in transfer proceedings.

4

(2) A motion to transfer shall be filed on a day prior to the date set for the adjudicatory hearing but not more that ten (10) days after the filing of the petition. The youth court may order a transfer study at any time after the motion to transfer is filed. The transfer study and any other social record which the youth court will consider at the transfer hearing shall be made available to the child's counsel prior to the hearing. Summons shall be served in the same manner as other summons under this chapter with a copy of the motion to transfer and the petition attached thereto.

(3) *The transfer hearing shall be bifurcated*. At the transfer hearing, the youth court shall first determine whether probable cause exists to believe that the child committed the alleged offense. For the purpose of the transfer hearing only, the child may, with the assistance of counsel, waive the determination of probable cause.

(4) *Upon such a finding of probable cause, the youth court may transfer jurisdiction of the alleged offense and the youth if the youth court finds by clear and convincing evidence that there are no reasonable prospects of rehabilitation within the juvenile justice system.*

(5) [Fourteen factors to be considered in determining reasonable prospects of rehabilitation are listed here.]

(6) If the youth court transfers jurisdiction of the alleged offense to a criminal court, *the youth court shall enter a transfer order* containing:

    (a) Facts showing that the youth court had jurisdiction of the cause and of the parties;

    (b) Facts showing that the child was represented by counsel;

    (c) Facts showing that the hearing was held in the presence of the child and his counsel;

(d) *A recital of the findings of probable cause and the facts and reasons underlying the youth court's decision to transfer jurisdiction of the alleged offense*;

(e) The conditions of custody or release of the child pending criminal court proceedings, including bail or recognizance as the case may justify, as well as a designation of the custodian for the time being; and

(f) A designation of the alleged offense transferred and of the court to which the transfer is made and a direction to the clerk to forward for filing in such court a certified copy of the transfer order of the youth court.

(emphasis added).

¶9. In the instant case, the transfer was not initiated on motion of the youth court prosecutor or on the youth court's own motion,[1] but it was brought up by counsel in another related case. Contrary to clear statutory requirements, there was no bifurcated transfer hearing held, and the transfer order does not contain the requisite findings of probable cause. The State, however, responds that Buck waived the above-quoted statutory procedure by requesting that she be certified as an adult and transferred to circuit court.

¶10. The very purpose of the Youth Court Law is to preclude allowing Buck to do what she did. A youth court is a division of a county court if the county has a county court, or a division of a chancery court. Miss. Code Ann. § 43-21-107. As such, "No proceeding by

---

[1] The order transferring Buck's case to circuit court indicated that it was on the State's motion. Since it was Buck who initiated the certification and transfer, it appears that the State acquiesced in her request. The statute does not contemplate a juvenile's transfer request.

the youth court in cases involving children shall be a criminal proceeding but shall be entirely of a *civil* nature."  (emphasis added).  The Legislature's goal in creating the youth court was one of rehabilitation:

> This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the youth court shall become a responsible, accountable and productive citizen, and that each such child shall receive such care, guidance and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest. It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children; however, when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.

Miss. Code Ann. § 43-21-103.  Thus, the objective of all those involved should focus on rehabilitation and what is in the best interests of the child.  The Louisiana Supreme Court stated as much in finding "the unique nature of the juvenile system is manifested in its noncriminal, or 'civil' nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as parens patriae in managing the welfare of the juvenile in state custody."  *In re C.B.*, 708 So. 2d 391, 396-97 (La. 1998).  This goal surely is the reason for the stringent procedural requirements, for a transfer sends a child from a civil court with a paramount goal of rehabilitation to a criminal court with goals of incarceration and retribution.

¶11.   It certainly appears that Buck knew precisely what she was doing in requesting certification and transfer to circuit court, although doing so defies any all notions of common sense and self-preservation.  We cannot, however, get past the proposition that the State and

7

the youth court, in their exercise of their parens patriae duties to Buck, would have found that certification would be beneficial to her. Nonetheless, the Youth Court judge should not have transferred without the specific statutory findings and conducting a bifurcated hearing.

## II. WHETHER BUCK RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

¶12.   On the issue of ineffective assistance of counsel, we agree with the Court of Appeals that Buck's representation before the youth court and circuit court was not ineffective. At the youth court proceeding, Buck was adamant about being transferred to circuit court despite her attorney's professed opposition to doing so. As for the guilty plea in circuit court, we echo the Court of Appeals' observation that Buck's circuit court counsel opposed her entering an open plea. The rule regarding ineffective assistance of counsel in the context of a guilty plea is that

> when a convicted defendant challenges his guilty plea on grounds of ineffective assistance of counsel, he must show unprofessional errors of substantial gravity. Beyond that, he must show that those errors proximately resulted in his guilty plea and that but for counsel's errors he would not have entered the plea.

*Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988). Buck has failed to establish that her representation prejudiced her. On the contrary, all of the prejudice she sustained came of her own volition despite the opposition of her attorneys. We therefore affirm the circuit court and the Court of Appeals on this issue.

## CONCLUSION

8

¶13. We certainly do not wish to see criminal defendants take a tactical gamble and then cry "foul" when it backfires. However, the statutory youth court transfer procedure is comprehensive and must be followed. The consequences of carving exceptions are far too grave. We therefore affirm the Warren County Circuit Court and the Court of Appeals on the finding that Buck's counsel was not ineffective, reverse on the issue of transfer of jurisdiction, and remand to the circuit court with instructions that it (1) vacate Rheuvonia Buck's conviction and sentence and (2) transfer this case to the Warren County Youth Court for further proceedings consistent with this opinion.

¶14. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**