41 So.3d 701 (2009)
Christopher Wade ELLIOTT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2008-CA-00948-COA.
Court of Appeals of Mississippi.
November 3, 2009.
Rehearing Denied June 8, 2010.
Certiorari Denied August 12, 2010.
*702 A. Randall Harris, Canton, attorney for appellant.
Office of The Attorney General by Billy L. Gore, attorney for appellee.
*703 Before MYERS, P.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Christopher Elliott appeals the Circuit Court of Marion County's dismissal of his motion for post-conviction relief. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On August 10, 2004, Elliott pleaded guilty in the Marion County Circuit Court to the crime of sexual battery. On September 3, 2004, the circuit court sentenced him to twenty years in the custody of the Mississippi Department of Corrections.
¶ 3. The crime relates to an incident that occurred on January 19, 2003. Elliott claims he had known the victim since high school and had had consensual sex with her. He stated she invited him into her home, and while high on marijuana and methamphetamine, engaged in oral sex with him while he was on the telephone with another woman whom he was also planning to see that evening. He claims the victim bit his penis in jealousy, whereupon he nearly blacked out, hit her in self-defense, and fled the premises. Later that evening, the victim was treated at a local hospital's emergency room for minor injuries sustained during the incident.
¶ 4. On September 4, 2007, Elliott filed a motion for post-conviction relief in circuit court, claiming that his guilty plea was invalid and that he had received ineffective assistance of counsel. Therefore, he contended his plea must be set aside and a jury trial granted. He attached affidavits to his motion from himself and his aunt, Martha Miller. In his affidavit, Elliott denied committing sexual battery and related his lawyer's alleged deficiencies. Regarding his plea, he claimed it was invalid because his court-appointed attorney told him he would only receive a suspended sentence and "would not have to go to jail.... [he] could go home that day." Also, Elliott explained he was involved in an automobile accident in October 2003; therefore, he had been prescribed, and was taking, Lorcet, Soma, and Zanax at the time of the plea hearing, which caused him confusion and memory impairment. Also, Elliott claimed he had no knowledge when he pleaded guilty that he would be required to register as a sex offender pursuant to Mississippi Code Annotated section 45-33-39(1) (Rev.2004). Miller's affidavit only claimed Elliott told her he was assured by his attorney he would only receive a suspended sentence if he pleaded guilty, and that he told her he was not guilty.
¶ 5. On March 26, 2008, the circuit court dismissed Elliott's motion as untimely filed because it was filed one day after expiration of the three-year statute of limitations. Alternatively, the circuit court denied the motion on the merits. On April 7, 2008, Elliott filed a motion to reconsider, claiming that his post-conviction relief motion was not time-barred as the motion was filed the day after Labor Day, a legal holiday.[1] Although Elliott's motion to reconsider was filed beyond ten days from the entry of judgment required by Mississippi Rule of Civil Procedure 59, Elliott argued preemptively that his motion to reconsider was not untimely because, as of April 2, 2008, Elliott had not received the *704 order of dismissal by mail.[2]
¶ 6. On April 18, 2008, the circuit court entered an "Amended Order of Dismissal." The court did not specifically state Elliott's motion to reconsider was time-barred and deleted the portion of the opinion pertaining to the motion for post-conviction relief's untimeliness. Making no substantive changes to its initial order, the circuit court again found no merit to Elliott's claims.[3] On May 9, 2008, Elliott appealed the amended order's dismissal, making the same arguments as raised in his initial motion for post-conviction relief. He also claims the circuit court erred in denying him an evidentiary hearing.

STANDARD OF REVIEW
¶ 7. The trial court's dismissal of a motion for post-conviction relief will not be disturbed unless the decision is clearly erroneous. Williams v. State, 872 So.2d 711, 712(¶ 2) (Miss.Ct.App.2004). Questions of law are reviewed de novo. Id.

ANALYSIS OF THE ISSUES

1. Jurisdiction
¶ 8. We note that Elliott's motion to reconsider, filed April 7, 2008, was not filed within ten days of the circuit court's entry of judgment on March 26, 2008, as required by Mississippi Rule of Civil Procedure 59(e). Elliott represented to the circuit court that he had not received the order of dismissal until April 2, when he contacted the clerk's office. The comment to Rule 59, however, expressly states that "the court is not permitted to extend" the time for filing a motion to alter or amend judgment. M.R.C.P. 59 cmt. Accordingly, it is questionable whether the circuit court had authority to enter an amended order more than ten days after the order of judgment.[4]See Knight v. State, 959 So.2d 598, 603(¶ 12) (Miss.Ct.App.2007) (when a judge seeks to alter or amend the judgment sua sponte, he is also bound by the ten-day period of Rule 59(e), and failure to meet this requirement voids the amended judgment). Elliott filed his notice of appeal on May 9, 2008, within thirty days of the amended order of dismissal, but not of the original order.
¶ 9. Whether Elliott's motion to reconsider was timely filed and whether the amended order was valid relates to the possible untimeliness of Elliott's notice of appeal and, thus, this Court's jurisdiction. The notice of appeal must be "filed with the clerk of the trial court within 30 days of the entry of the judgment or order appealed from." M.R.A.P. 4(a). The appeal shall be dismissed unless the notice is timely filed pursuant to Mississippi Rule of Appellate Procedure 4 or 5. M.R.A.P. 2(a)(1). However, an appeal of post-conviction relief petitions are governed by Mississippi Rule of Appellate Procedure 2(c), which allows this Court to suspend the requirements of the appellate rules in the interest of justice. Accordingly, this Court may suspend Rule 4(a) to allow an out-of-time appeal in criminal cases and "civil" actions for post-conviction relief. See M.R.A.P. 4 cmt. To the extent Elliott's notice of appeal may not be timely filed, we suspend the requirements of Rule *705 4(a) under the unique circumstances of this case and proceed to the merits of Elliott's appeal.

2. Elliott's Guilty Plea

a. Voluntary and Intelligent
¶ 10. Elliott argues that his plea was not voluntary or intelligent. First, he contends he was "induced by deception" by his attorney at the time, who promised that if Elliott pleaded guilty, he would only receive a suspended sentence. Second, Elliott claims he was under the influence of prescribed pain medications, which caused him confusion during the plea hearing. Elliott attached two affidavits-one from himself and one from Miller, as proof of his claims.
¶ 11. A plea of guilty is only binding if it is entered voluntarily and intelligently. Myers v. State, 583 So.2d 174, 177 (Miss.1991). In order to determine whether a plea is voluntary, the appellate court examines whether "the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea." Wilson v. State, 577 So.2d 394, 397 (Miss.1991). Further, "[s]olemn declarations in open court carry a strong presumption of verity." Baker v. State, 358 So.2d 401, 403 (Miss.1978) (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).
¶ 12. The transcript of Elliott's plea hearing contains the following colloquy, made under oath:
The Court: Now Christopher, what happened that got you indicted for sexual battery?
Elliott: I was talking on the phone, fixing to leave and she started, you know, she started messing with me. And the next thing I know she bit me and I blanked out and I hit her.
....
The Court: All right. Now, let me ask you think, Christopher: I presume she's going to come over here and testify you forced her to allow you to insert your penis in her mouth and she didn't want to do that. Is that the truth?
Elliott: Not according to me it's not.
The Court: All right. Well, you understand that's what trials are all about?
Elliott: Yes, sir. I reckon I'd say that's the truth, yeah.
The Court: Huh?
Elliott: I'm going to say that's the truth.
The Court: Well, I don't want you just saying something. Now, is it the truth?
Elliott: No, sir. It's not the truth, but
The Court: All right. Do you want to go on to trial on this?
Elliott: Well, I was advised to go ahead and plead guilty to it.
The Court: Well, I understand that, Christopher, but I mean though I don't want you pleading guilty unless you're satisfied that if we went to trial the jury would most likely believe her because, you know, you don't have to testify. That's your decision. You can testify if you wanted to. And what's going to happen is she's going to get up here and testify, I presume that whatever happened between the two of you she wasn't willfully engaging in that activity. And then you forced it on her. And then the jury has got to determine who they believe. If they believe that she's lying they are going to find you not guilty. It's going to take twelve of them.

*706 So do you agree that her version of this is the one that would be most believable by the jury?
Elliott: Yes, sir, I do.
The Court: ... And I presume that, Christopher, this is one of those where just two people were present and it's one against the other, but do you believe that if the State's evidence is believed the State would have enough proof to prove each of these cases beyond a reasonable doubt?
....
Elliott: I do, Your Honor.
The Court: And, [Ms. Barnes, Prosecutor], do you need to add anything to the record on Christopher's situation....
Ms. Barnes: Your Honor, I would just add that on the night in question Mr. Elliott stopped by [the victim's] house and she did let him in and allow him to use the telephone, which he did do. Her testimony would then be that he forced her to perform oral sex on him, that she did bite him and got away from him, ran to the back bedroom where her child was sleeping, locked herself in the bedroom and called 911. When the police arrived on the scene they found one of Mr. Elliott's shoes out in the yard where he had fled the scene and left it there. And, also, a knife was found on the property that had come from Mr. Elliott's person.
The plea hearing transcript also shows Elliott was fully advised by the circuit court judge of his charge, the effect of the plea on his rights, and the possible sentence. Elliott agreed with the judge that no one had informed him he would receive a particular sentence, coerced him, made promises to him, and that his guilty plea was freely and voluntarily entered. Furthermore, Elliott signed a petition to enter a guilty plea to the same effect.
¶ 13. While Elliott contends that his attorney advised him he would only receive a suspended sentence for the charge, the circuit court judge specifically told Elliott:
There won't be any recommendations as to sentences. The District Attorney's [O]ffice won't make any recommendations, law enforcement won't and your attorneys won't. But I'm going to sit down with all the material ... the presentence, victim impact ... the hearing today and your petition, arrive at what I believe is a fair sentence and that's the sentence ... you will serve. Now, has anybody told ... [you] if you will plead guilty you are going to receive a particular sentence, length of sentence or anything like that?
Elliott responded, "no." Elliott was told by the circuit court judge that he could be sentenced to the maximum term of thirty years in prison, and Elliott confirmed that he understood. Accordingly, the record does not indicate Elliott was deceived or coerced by his attorney to plead guilty, as his affidavit states.
¶ 14. Regarding Elliott's contention that he was under prescription pain medicine at the hearing and, therefore, confused about his plea, Elliott did tell the judge he was on medication, but he stated that it did not impair his comprehension:
Elliott: I'm taking pain pills.
The Court: Now, are you taking them as prescribed?
Elliott: Yes, sir.
The Court: Do they affect you mentally to where you don't understand?
Elliott: No, sir.
The Court: So you're fully understanding what we're going through, what I've asked you and you understand that?
Elliott: Yes, sir.
*707 Elliott's signed plea petition also denies he was "under the influence of any drugs or intoxicants" when he pleaded guilty. Therefore, the record reflects that while Elliott was indeed on pain medication at the time of his plea colloquy, he convinced the circuit court judge that it did not impair his comprehension. We find no merit to Elliott's belated claim of impairment.

b. Sex Offender Registration
¶ 15. Elliott also claims that his guilty plea could not be voluntary and intelligent because he was not informed he would have to register as a sex offender. Elliott insists he would not have pleaded guilty had he known of this requirement. Also, he argues his plea did not conform to the mandates of Mississippi Code Annotated section 45-33-39(1); thus, his due process rights were violated. Section 45-33-39(1) provides, in pertinent part, that:
The court shall provide written notification to any defendant charged with a sex offense as defined by this chapter of the registration requirements.... Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant. The court shall obtain a written acknowledgment of receipt on each occasion.
¶ 16. Elliott is correct that the record is silent pertaining to the court's giving him notice of the sex offender registration requirements and his receipt of such. He is also correct in noting that, while he did raise this issue in his original motion for post-conviction relief, neither the initial nor the amended trial court orders addressed this issue. However, we find Elliott's argument without merit.
¶ 17. Both this Court and the Mississippi Supreme Court recently addressed this issue in Magyar v. State, 18 So.3d 851 (Miss.Ct.App.2008), aff'd, 2007-CT-00740-SCT (Miss. August 13, 2009). This Court originally affirmed the denial of John Magyar's motion for post-conviction relief, finding that advising the defendant of the sex offender registration requirement was a collateral consequence to pleading guilty. Magyar, at (¶ 11). The supreme court found no error in this regard, but "granted certiorari to address the statutory mandate that trial judges inform criminal defendants-prior to accepting their guilty pleas-of the requirement to register as a sex offender." Magyar, at (¶ 4). The supreme court explained that legislation mandating what our trial judges must say to a defendant in a courtroom during a plea hearing is "tantamount to ... approval of legislative usurpation of judicial prerogative." Id. at (¶ 8). The supreme court concluded that "[s]ection 45-33-39(1) confers no right on a criminal defendant charged with a sex crime and imposes no duty on our trial judges" because of the distinction between legislation and judicial duty. Id. The supreme court also found, as we had, that the requirement to register as a sex offender under this statute is not a direct or material consequence of a guilty plea but a collateral consequence, and as such, "the trial court will not be put in error for failing to advise" the defendant of the registration requirement before accepting his guilty plea. Id. at (¶ 11).
¶ 18. Elliott notes that this Court handed down its decision in Magyar after his motion for post-conviction relief was filed, and we note that the supreme court handed down its opinion after Elliott filed his brief with this Court. In his appellate brief, Elliott attempts to distinguish Magyar factually from the case at bar. He states that in Magyar this Court found the requirements of section 45-33-39(1) were met because Magyar's sentencing order contained the notice, and in the case at bar, Elliott was given no notice at all. However, since the supreme court pronounced in Magyar that no error will be *708 found in the trial court's failing to advise the defendant of sex offender registration, we find this argument without merit.
¶ 19. Thus, we conclude the circuit court did not err in finding that Elliott entered a voluntary and intelligent guilty plea.

3. Ineffective Assistance of Counsel
¶ 20. Elliott contends that he received ineffective assistance of counsel in pleading guilty because his attorney did not discuss the merits of the case with him, did not independently investigate the crime, and did not bring forward possible mitigating and exculpatory evidence during the plea hearing.
¶ 21. To prove ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and this deficiency prejudiced his defense. Liddell v. State, 7 So.3d 217, 219(¶ 6) (Miss.2009) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong but rebuttable presumption that trial counsel was competent. Id. at 219-20(¶ 6) (quoting Bennett v. State, 990 So.2d 155, 158(¶ 9) (Miss.2008)). In the context of a guilty plea, "when a convicted defendant challenges his guilty plea on grounds of ineffective assistance of counsel, he must show unprofessional errors of substantial gravity. Beyond that, he must show that those errors proximately resulted in his guilty plea and that but for counsel's errors he would not have entered the plea." Buck v. State, 838 So.2d 256, 260(¶ 12) (Miss.2003) (quoting Reynolds v. State, 521 So.2d 914, 918 (Miss.1988)).
¶ 22. Elliott enumerated many of the alleged deficiencies of his trial counsel in his affidavit attached to his motion for post-conviction relief. Specifically, he claims that his counsel never discussed the merits of his case with him or showed him any discovery. He states his counsel did not know that Elliott and the victim had had consensual sex in the past or that at the time of the incident she was high on marijuana and methamphetamine. Elliott criticizes his attorney for not interviewing the victim more fully and discovering she had two justice court "driving under the influence" charges, which would cast doubt on her credibility and serve as mitigating evidence at sentencing. However, we fail to see how any of these bare allegations further Elliott's case.
¶ 23. Elliott's testimony at the plea hearing contradicts his contentions. He stated under oath that he had met with, conferred, and discussed his case thoroughly with his attorney. Elliott affirmed that he was "totally satisfied" with his counsel's legal representation. Moreover, Elliott has not presented any specific evidence that, but for his counsel's alleged deficiencies, he would not have pleaded guilty. Instead, he supports his contentions of deficient counsel with mere assertions in the form of his own affidavit. Elliott has failed to show how such alleged deficiencies would have made him go to trial.
¶ 24. Elliott's contention that had he known about the sex offender registration requirement, he would not have pleaded guilty, is also without merit. As previously stated, this Court, in Magyar, at (¶¶ 10-11) held that advising a defendant of the sex offender registration requirement was a collateral consequence of his guilty plea, and Magyar's sentencing order was sufficient to comply with section 45-33-39(1). We also held that it did not constitute ineffective assistance of counsel for failure to advise the defendant of the registration requirement. Id. at (¶ 21). The Mississippi Supreme Court affirmed our ruling that sex offender registration *709 is a collateral consequence of a guilty plea. Magyar, at (¶ 11). Elliott attempts to distinguish Magyar regarding ineffective assistance because, unlike Magyar, the notice of the sex offender registration requirement was not in his sentencing order. Also, Elliott states in his affidavit he would have gone to trial had he known of the requirement, so his counsel's failure to tell him of the requirement was ineffective assistance. While these are distinguishable factors, the pivotal holding of Magyar was that the requirement to register as a sex offender is a collateral consequence of a guilty plea. Magyar, at (¶ 11), aff'd, 2007-CT-00740-SCT (¶ 11). The United States Court of Appeals for the Fifth Circuit has stated that counsel's failure to inform the defendant of the collateral consequences of a guilty plea is never grounds for ineffective assistance of counsel under Strickland; "defense counsel has done all he must under the Constitution when he advises his client of the direct consequences of a guilty plea." Santos-Sanchez v. United States, 548 F.3d 327, 334 (5th Cir.2008) (quoting United States v. Banda, 1 F.3d 354, 356 (5th Cir.1993)). Accordingly, the circuit court properly found no merit to Elliott's claim of ineffective assistance of counsel.

4. Evidentiary Hearing
¶ 25. Elliott contends that the circuit court erred in denying his request for an evidentiary hearing. We find no such error. "The trial court has `considerable discretion' in determining whether to grant an evidentiary hearing." Meeks v. State, 781 So.2d 109, 114(¶ 14) (Miss.2001) (citing Smith v. State, 646 So.2d 538, 544 (Miss.1994)). "Not every motion for post-conviction relief must be afforded a full adversarial hearing by the trial court. The movant must demonstrate, through affidavits or otherwise, the potential existence of facts that, if proven at the hearing, would entitle the movant to relief." Jones v. State, 795 So.2d 589, 590(¶ 3) (Miss.Ct.App.2001) (citing Potts v. State, 755 So.2d 1196, 1198(¶ 5) (Miss.Ct.App. 1999)). Elliott makes no such showing. Further, a trial judge may disregard the movant's assertions when the record substantially contradicts them, as it does here. Hebert v. State, 864 So.2d 1041, 1045(¶ 11) (Miss.Ct.App.2004) (citing White v. State, 818 So.2d 369, 371(¶ 4) (Miss.Ct.App. 2002)). Therefore, we find no error in the circuit court's denial of an evidentiary hearing.

CONCLUSION
¶ 26. For the above reasons, we find the circuit court properly dismissed Elliott's motion for post-conviction relief.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., AND GRIFFIS, J.
ROBERTS, J., Specially Concurring.
¶ 28. I agree with the majority's well-reasoned opinion. I do not write separately because I find the majority's opinion inadequate in any way. Instead, I write separately to discuss my concern with the constitutional validity of Christopher Wade Elliott's plea under Alford. Having closely examined Elliott's pro se motion for post-conviction relief and construed it liberally, *710 I conclude this issue was neither presented to the trial court nor preserved for appeal. I write separately in the hope that what I say may, in some small way, assist the bench and the bar when analyzing the constitutional issues present when an accused indicates a desire to plead guilty while simultaneously protesting his or her innocence.
¶ 29. The overwhelming majority of incarcerated offenders lose their liberty either as a direct consequence of pleading guilty and factually admitting the commission of the charged offense or by a jury's verdict concluding that the prosecution proved the charge beyond a reasonable doubt. Today's case is one of those rare occasions when an accused indicates his desire to plead guilty and expose himself to incarceration, yet he simultaneously protests that he is factually innocent of the crime. Such a conundrum creates a constitutional dilemma for the trial judge and mandates, I suggest, a full inquiry by the trial court concerning the reason for such a plea as well as a determination that pleading guilty is a rational choice by the accused and is, in fact, in the accused's "best interest."
¶ 30. A "best-interest" guilty plea is often simultaneously referred to as an "Alford plea" in recognition of the United States Supreme Court's decision in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Henry C. Alford pled guilty to second-degree murder in a North Carolina state court proceeding. After exhausting the state post-conviction review, Alford filed for habeas corpus relief in federal court. The district court denied relief, but on review, the Fourth Circuit Court of Appeals, in a divided vote, granted relief. The United States Supreme Court analyzed Alford's guilty plea within the parameters of the Fifth and Fourteenth Amendments' prohibitions against a deprivation of liberty without due process of law. Ultimately, the United States Supreme Court found that Alford was not entitled to relief.
¶ 31. A short discussion of the facts in Alford is appropriate. Charged with first-degree murder, Alford realized that, if convicted, he risked being sentenced to death or, under the most lenient possible outcome, life imprisonment. Id. at 26-27, 91 S.Ct. 160. However, the prosecution offered Alford the opportunity to plea guilty to a reduced charge of second-degree murder in lieu of pursuing a conviction for first-degree murder. Id. at 27, 91 S.Ct. 160. Alford agreed to plead guilty to second-degree murder. Id.
¶ 32. During the guilty plea hearing, a police officer testified and summarized the prosecution's case against Alford. Id. at 28, 91 S.Ct. 160. There were no eyewitnesses to the victim's murder, but two witnesses presented testimony that "shortly before the killing[,] Alford took his gun from his house, stated his intention to kill the victim, and returned home with the declaration that he had carried out the killing." Id. Defense counsel had interviewed various witnesses that Alford intended to call at trial to establish his innocence, but none of those witnesses supported Alford's defense. To the contrary, statements from those witnesses strongly indicated that Alford was guilty. The United States Supreme Court characterized the evidence against Alford as "strong evidence of actual guilt." Id. at 37, 91 S.Ct. 160.
¶ 33. Next, Alford "took the stand and testified that he had not committed the murder but that he was pleading guilty [to second-degree murder] because he faced the threat of the death penalty if he did not do so." Id. at 28, 91 S.Ct. 160. Based on Alford's steadfast denial that he murdered the victim, the trial court judge *711 asked Alford whether he was certain he wanted to plead guilty to second-degree murder. Id. at 29, 91 S.Ct. 160. Alford responded affirmatively. Id. Alford's history included a prior conviction for murder, nine armed robbery convictions, and three other assorted felony convictions. The trial court judge took Alford's substantial criminal history into consideration and subsequently sentenced Alford to thirty years' imprisonment-the maximum possible penalty for second-degree murder pursuant to North Carolina state law at that time. Id.
¶ 34. The Supreme Court noted that Alford "intelligently conclude[d] that his interests require[d] entry of a guilty plea" and the record before the trial court judge contained "strong evidence of actual guilt." Id. at 37, 91 S.Ct. 160. "Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading." Id. Stated differently, "[c]onfronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term." Id. The United States Supreme Court held that the trial court judge did not "commit constitutional error in accepting" Alford's guilty plea to second-degree murder. Id. at 38, 91 S.Ct. 160.
¶ 35. Although there are numerous Mississippi decisions involving Alford pleas, such pleas are relatively rare. It is essential to be certain that these rare pleas are permissible based on the standards involved. As previously mentioned, the circumstances of the guilty plea in Alford involved an accused's protestation of innocence in the face of "strong" evidence of guilt. While there was some evidence of Elliott's guilt, based on the scant record before us, it is certainly not as strong as the evidence of guilt in Alford. There were only two witnesses to the events that led to the charge that Elliott facedElliott and the victim. The record at the plea hearing is simply void of any other incriminating evidence against Elliott.
¶ 36. Elliott did not confess or give any statements that were adverse to his interests. He maintained that the victim voluntarily consented to performing oral sex on him, but later she became jealous and bit him when she realized he was talking to another girlfriend on the phone. I do not mean to imply that I find Elliott more credible than the victim. I only mention these aspects to point out that the evidence against Elliott was a "he said/she said" scenario. The circuit court judge came to the same conclusion. This fact is clear from the circuit court judge's statement that "this is one of those [cases] where just two people were present and it's one against the other." To summarize, while there was evidence that Elliott may have been guilty of sexual battery, that evidence was not necessarily any "stronger" than the evidence that Elliott was not guilty of sexual battery.
¶ 37. Another critical aspect of an Alford plea is that the accused must "intelligently conclude that his interests require entry of a guilty plea ... because in his view he had absolutely nothing to gain by a trial and much to gain by pleading." Id. at 37, 91 S.Ct. 160. The Ohio Supreme Court has stated that "[t]he essence of an Alford plea is that a [d]efendant's decision to enter the plea against his protestations of factual innocence is clearly and unequivocally supported by evidence that he exercised that calculus for the purpose of avoiding some more onerous penalty that he risks by, instead, going to trial on the charges against him." State v. Gossard, *712 2003 WL 21658565 at *3 (Ohio Ct.App.2d 2003). The Ohio Supreme Court has also adopted a test to determine whether a record affirmatively demonstrates that an Alford plea has been voluntarily and intelligently made. State v. Piacella, 27 Ohio St.2d 92, 271 N.E.2d 852, 855 (1971). The fifth factor requires that "the record affirmatively discloses that ... [the defendant] was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both." Id. I do not suggest that the Mississippi Supreme Court should be persuaded to adopt Ohio's test. Instead, I borrow this language because it eloquently demonstrates my point. That is, a definitive component of an Alford "best-interest" plea is a reasonably articulable basis that pleading guilty is in the accused's "best-interest."
¶ 38. In this case, I can find no such basis. Elliott was indicted for one count of sexual battery. He was thirty-one years old when he pled guilty. Elliott stated that the victim was approximately the same age. Elliott did not plead guilty pursuant to a plea bargain. The circuit court judge told Elliott that, when it came to accepting plea bargains, "[w]e don't do that in this district." In other words, Elliott's plea was an "open" plea in that he had no expectation of the sentence he might receive. This fact is abundantly clear in the record.
¶ 39. The prosecution did not drop any charges against Elliott in exchange for his guilty plea. Additionally, Elliott did not plead guilty to a lesser-included offense. He was indicted for sexual battery, and he pled guilty to sexual battery. If he opted for trial and the jury found him guilty, Elliott faced a sentence of up to thirty years in the custody of the Mississippi Department of Corrections. Moreover, Elliott could have appealed his conviction for review. By pleading guilty, Elliott faced the exact same possible outcome but with no opportunity to appeal. In Alford, the option of pleading guilty to second-degree murder and receiving a maximum sentence of thirty years is obviously in one's best interest when compared to going to trial and receiving, at worst, the death penalty or, at best, life in prison. Here, the possible sentence after a trial on sexual battery was no different than the possible sentence after pleading guilty to sexual battery. I submit that neither Elliott nor any reasonable person could conclude that his guilty plea was in his best interest.[5]
¶ 40. One could argue that by pleading guilty and avoiding the time and expense of a trial, the sentencing judge might be *713 persuaded to be lenient when sentencing a defendant. However, it is impermissible for a sentencing judge to punish a defendant more harshly for the sole reason that the defendant exercised his or her constitutional right to a trial by jury. "[I]t is absolutely impermissible for a trial judge to impose a heavier sentence based in whole or in part upon a defendant's exercise of his constitutionally protected right to trial by jury." Gillum v. State, 468 So.2d 856, 864 (Miss.1985). The possible expectation of leniency at sentencing for pleading guilty is logically connected to the concept that, having confessed guilt, the defendant is expressing a willingness to accept responsibility for his or her actions and is already on the path toward rehabilitation. Such a concept is inapplicable to Elliott, because Elliott claimed actual innocence.
¶ 41. To summarize, based upon the record before us, there is neither "strong" evidence of Elliott's guilt, nor any basis to conclude that Elliott's decision to plead guilty was somehow in his best interest. When an accused seeks to plead guilty but maintains he is factually innocent, the trial judge must be on high alert. Prior to acceptance of such a guilty plea, the record must be populated with evidence indicating both strong proof of actual guilt and a rational basis for the conclusion that acceptance of such a plea is truly in the accused's "best interest." Only then does the guilty plea qualify as voluntary and intelligent, thereby meeting the constitutional standards expressed in Alford.
LEE, P.J., AND GRIFFIS, J., JOIN THIS OPINION.
NOTES
[1] Mississippi Rule of Civil Procedure 6(a) provides that if the last day of a time period presented by the rules, or an appellate statute, is a Saturday, a Sunday, or a legal holiday, the period runs until the end of the next day which is not a Saturday, Sunday, or a legal holiday.
[2] Fortuitously, Elliott's counsel inquired about it that day, and the circuit court faxed him a copy.
[3] Not only did the circuit court judge find Elliott's claims without merit, but he also recommended that the district attorney's office prosecute Elliott for perjury.
[4] The amended order made no substantive changes to the original order, except to omit discussion of the untimeliness of Elliott's initial motion for post-conviction relief.
[5] Elliott claims his attorney assured him that he would be placed on probation if he pled guilty. I agree that Elliott's assertion is belied by the record and Elliott's sworn testimony during the plea hearing. However, there is some logical support for Elliott's belief. Elliott was on bond when he pled guilty. At the end of the plea hearing, the circuit court judge asked whether the prosecution objected to Elliott remaining on bond until the sentencing hearing, which was scheduled for three weeks later. The prosecution did not object to Elliott remaining on bond. Assuming that there was an "unspoken" understanding that he would be placed on probation, being allowed to remain on bond and walk out of the courtroom after the plea, could have contributed to that belief. An expectation of harsh sentencing naturally accompanies a greater risk of flight. Accordingly, it seems somewhat inconsistent to allow someone out on bond after a guilty plea if there is an expectation of harsh sentencing in the future. Furthermore, these circumstances are somewhat indicative of the prospect that defendants are aware that unless they confirm that no one has promised them anything in exchange for their guilty plea, the circuit court will not accept their plea. The resulting incentive is for a defendant to lie under oath when that defendant has an expectation of the outcome based on an "unspoken" understanding of what his or her sentence will most likely be.