# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01432-COA

TIMOTHY MEADOWS                                             APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

DATE OF JUDGMENT:            08/12/2015
TRIAL JUDGE:                 HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:   JONES COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: ERIN ELIZABETH BRIGGS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:           ANTHONY J. BUCKLEY
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF HEAT-OF-PASSION
                             MANSLAUGHTER AND SENTENCED TO
                             TWENTY YEARS IN THE CUSTODY OF
                             THE MISSISSIPPI DEPARTMENT OF
                             CORRECTIONS, WITH FIFTEEN YEARS
                             TO SERVE AND FIVE YEARS OF POST-
                             RELEASE SUPERVISION, AND TO PAY A
                             FINE OF $2,000 AND RESTITUTION OF
                             $7,183
DISPOSITION:                 REVERSED AND REMANDED - 02/14/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## CONSOLIDATED WITH

## NO. 2015-KA-01525-COA

ALEX CREWS                                                 APPELLANT

v.

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT:             08/03/2015
TRIAL JUDGE:                  HON. WAYMAN DAL WILLIAMSON
COURT FROM WHICH APPEALED:    JONES COUNTY CIRCUIT COURT,
                              FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: JOSEPH SCOTT HEMLEBEN
NATURE OF THE CASE:           CRIMINAL - FELONY
TRIAL COURT DISPOSITION:      CONVICTED OF HEAT-OF-PASSION
                              MANSLAUGHTER AND SENTENCED TO
                              TWENTY YEARS IN THE CUSTODY OF
                              THE MISSISSIPPI DEPARTMENT OF
                              CORRECTIONS, WITH FIFTEEN YEARS
                              TO SERVE AND FIVE YEARS OF POST-
                              RELEASE SUPERVISION, AND TO PAY A
                              FINE OF $2,000 AND RESTITUTION OF
                              $7,183
DISPOSITION:                  REVERSED AND REMANDED - 02/14/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.     A Jones County grand jury indicted Timothy Meadows and Alex Crews for

manslaughter, in violation of Mississippi Code Annotated section 97-3-35 (Rev. 2014).[1]

After a joint trial of both defendants, the jury rendered guilty verdicts for Crews and

Meadows. The Jones County Circuit Court sentenced Meadows and Crews each to a term

of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with

fifteen years to serve, five years suspended, and five years on post-release supervision. Both

---

[1] Crews and Meadows were represented by separate counsel at trial.

Crews and Meadows were further ordered to pay $9,565.50, which included court costs, fines, and restitution.

¶2. Crews and Meadows each filed a separate motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied their posttrial motions. Crews and Meadows each timely filed an appeal. Appellate counsel for both Meadows and Crews subsequently requested that their appeals be consolidated because all of the appealable issues can be adequately addressed in one appeal.

¶3. On appeal, Crews and Meadows argue that circuit court lacked jurisdiction over their case because the youth court possessed original jurisdiction over this proceeding, and the youth court never transferred jurisdiction to the circuit court. The State concedes that the circuit court herein lacked jurisdiction due to the State's failure to follow the statutory procedure for transferring cases from youth court. Finding that the circuit court indeed lacked jurisdiction over the matter, we reverse and remand for further proceedings consistent with this opinion.

**FACTS**

¶4. On August 27, 2014, Cynthia Craney and Timothy Williamson, along with Craney's son, Alex Crews, and Crews's best friend, Timothy Meadows, went to the Leaf River to ride four-wheelers. That evening, as they were leaving, Williamson became angry with Craney and Crews over whether to leave a broken four-wheeler behind. A physical altercation arose between Williamson, Crews, and Meadows. Craney called 911, and Crews and Meadows ultimately restrained Williamson in a headlock/chokehold until help arrived. Williamson was

dead when officers arrived on the scene.

¶5.    A recording of Craney's 911 call was admitted into evidence, wherein the jury heard Craney saying hysterically, "I need someone down here at this river. My boyfriend, he's hitting on my kids. He's beating the hell out of them. . . . [O]h God, please. . . . He's got my son on the ground. " When the 911 operator asked the assailant's name, Craney answered: "[H]is name is Timothy Williamson. He's on probation . . . for aggravated assault. . . . He's drinking and his hands are lethal. . . . He just went . . . irate . . . . [T]hey're right here on the ground right now trying to detain him. He's a big man . . . and his hands are lethal." The 911 operator informed Craney to start looking for the police officers arriving on the scene. Craney informed the operator, "My baby's seventeen years old, and his friend's trying to help him hold him down; he's going crazy."

¶6.    Jones County Sheriff's Deputies Sonny Jefcoat and David Ward were dispatched to Old River Road in Jones County on the night of August 27, 2014, in response to a 911 call from Craney. Deputy Jefcoat arrived on the scene first. Deputy Jefcoat testified that Craney told him that "Williamson had assaulted her boys and they were holding him down," and that Williamson "jumped on my boys" and "attacked" them. Craney entered Deputy Jefcoat's patrol car and led him to the site of the fight. The video from Deputy Jefcoat's patrol car dash camera, which was entered into evidence at trial, revealed Craney informing Deputy Jefcoat, "Sir, he's a lot further down there, my kids have him kind of contained. He's been drinking. He's not supposed to be drinking. He tried to jump on my son. . . . I have no idea why he freaking went off like the way he did." Deputy Jefcoat testified that when he

4

approached the scene, he saw Craney's truck in the road facing him with its lights on, and he saw Williamson, Crews, and Meadows on the ground beside the truck. Deputy Jefcoat then checked Williamson for a pulse but found none, so he proceeded to perform chest compressions until Deputy Ward arrived and relieved him.

¶7. Deputy Ward arrived on the scene next, and placed Meadows in his patrol car and Crews in Deputy Jefcoat's patrol car. The jury observed the video taken from the camera in Deputy Jefcoat's patrol car which showed Crews crying and screaming, "I'm sorry. I'm sorry . . . Mama. Mama. I just killed Tim. I just did. He couldn't breathe and I kept on. He punched me in the face five . . . times . . . . Tim, wake up. I'm sorry, man. I'm sorry." Deputy Ward's patrol car was also equipped with a dash camera. The video from the patrol car was admitted into evidence, and showed Deputy Ward arrive on the scene and ask Craney what happened. Craney informed him that Williamson "got in a fight with my kids." Crews also informed Deputy Ward that Williamson "punched me in the mouth, and me and [Meadows] just put him to sleep. He won't wake up." Deputy Ward testified that Craney also told him that she and Williamson got into a fight, and that she told him more than once that Williamson "just went nuts" and went "crazy." Deputy Ward recalled Craney also telling him that Williamson started the fight and that Williamson had taken a Xanax earlier in the day.

¶8. Forensic pathologist Lisa Funte performed Williamson's autopsy. She testified that Williamson was six feet two inches tall, and weighed 254 pounds. Funte stated that Williamson suffered bruising/contusions and lacerations on his face, lip, upper extremities,

5

and torso. Funte also noticed bruising to his scalp, and hemorrhages to the muscles in the neck/throat, eyes, and chest muscles. Funte testified that the hemorrhages in the neck/throat and eye were consistent with asphyxiation, and that hemorrhaging to the chest can be caused by CPR. Funte also testified that Williamson's blood-alcohol content was .065, and that caffeine and cotinine, a breakdown product of tobacco, were present in Williamson's blood. Williamson's toxicology report did not indicate the presence of Xanax, but Funte admitted that she could not definitively say that he did not take Xanax within a couple hours of his death. Funte testified that cause of death was "asphyxiation associated with strangulation" and that the manner of death was homicide.

¶9. In the morning/early afternoon after the incident, Deputy Keith Leroy took recorded statements from Craney, Meadows, and Crews. Deputy Leroy testified that he did not take statements the night before because everyone appeared heavily intoxicated. The record reflects that Deputy Leroy obtained signed *Miranda*[2] waivers from Crews and Meadows before taking their statements.

¶10. At trial, Craney, Crews, and Meadows testified that at about 2 p.m. on August 27, 2014, they went with Williamson to the Leaf River sandbar to ride four-wheelers with Larry Walters, his wife, and another couple. After discovering that one of the four-wheelers stopped working, Craney testified that Williamson "was mad. He was furious. He didn't want to leave the four-wheeler there because he had promised Larry that he would take it back. He was raising cane and cussing. [Crews] heard everything, or I assume he did, when

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he walked up." Crews testified that he tried to calm down Williamson and Craney, but Williamson "took it the wrong way when I was trying to calm him down . . . . [H]e took it the wrong way and he just flipped on us." Crews and Craney both testified that Williamson then punched Crews in the mouth. Crews and Craney also both stated that Williamson "passed a couple licks," and grabbed Crews by the throat and choked him against the truck on the passenger's side. Crews and Craney testified that Meadows, who had been asleep in the truck when the fight started, then got out of the truck and helped get Williamson off of Crews. Williamson tried to get up and "went for the truck" on the driver's side, and Craney told the boys to get the keys out of the truck.

¶11. Meadows testified that he woke up to a "bump" on the truck, and he saw Williamson choking Crews by the back passenger side. Meadows exited the truck and "jumped in between them and broke them up." Because he was asleep when the fight started, Meadows admitted that he did not know what the fight started over. Meadows testified that Williamson hit him, and "I don't know if he hit [Craney], but she fell to the ground."

¶12. After Craney told Crews and Meadows to get the keys out of the truck, Meadows testified that Williamson attacked him as he tried to get the keys. Meadows testified that Williamson got in the driver's seat, and Meadows reached for the keys while standing outside the driver's side. Williamson then attacked Meadows by biting and hitting him. Crews and Meadows both testified that Williamson and Meadows began fighting for the keys, and Crews pulled Williamson from the passenger's side as Meadows pushed from the driver's side. Both Crews and Meadows stated that Williamson "was still fighting" and "swinging,"

so Meadows put Williamson in a headlock as they both fell out of the passenger's seat. Meadows then hit Williamson and Crews kneed him. Crews testified that he put Williamson in a headlock on the ground. Crews and Meadows stated that Williamson kept trying to get up, so Meadows held Williamson's arm to help Crews hold him down. Crews testified that he and Meadows were holding Williamson down until help arrived, and they were still lying in that spot when police arrived.

¶13. Regarding the physical altercation with Williamson, Crews testified that he was scared and defending himself. He explained that he felt "[t]errified. Afraid for my mother and my friend . . . because I knew what [Williamson] was capable of." Crews testified that Williamson started the fight, and he felt the need to defend himself. Meadows also testified, "I was scared. He was scared. [The m]ain thing [was that] we [were] just defending ourselves making sure we [weren't] getting hurt." Meadows testified that he would not do anything differently because he "knew [he] was defending [him]self."

¶14. The record reflects that the jury received instructions on heat-of-passion manslaughter and self-defense. The circuit court denied Meadows's and Crews's requested instruction on the alternative theory of accident and misfortune, for the stated reason that "I think the claim has been self-defense from the start of the trial. D-4 will be refused." The jury ultimately returned a verdict finding Crews and Meadows guilty of heat-of passion manslaughter. After the denial of their posttrial motions, Crews and Meadows now appeal.[3]

**DISCUSSION**

---

[3] The record shows that the issue of the exclusive jurisdiction of the youth court herein was not raised at trial or in the posttrial motions.

## I. Jurisdiction

¶15. Crews and Meadows argue that circuit court lacked jurisdiction over their case because the youth court possessed original jurisdiction over this proceeding. Crews and Meadows submit that since the proceeding was never transferred to the circuit court by the youth court, Meadows's and Crews's convictions and sentences are illegal and void. *See* Miss. Code Ann. § 99-19-3(1) (Rev. 2015) ("A person charged with an offense shall not be punished therefor unless legally convicted thereof in a court having jurisdiction of the cause and of the person."). Accordingly, Crews and Meadows argue that they are entitled to have this Court vacate their convictions and sentences and remand this case with instructions to transfer the case to the Jones County Youth Court for further proceedings. As stated, the State concedes that the circuit court herein lacked jurisdiction due to the State's failure to follow the statutory procedure for transferring cases from youth court.

¶16. The Mississippi Supreme Court has expressed that "[j]urisdiction is a question of law and is reviewed de novo." *In re M.I.*, 85 So. 3d 856, 857 (¶6) (Miss. 2012).

¶17. The record reflects that Meadows was born November 13, 1996, and Crews was born on June 19, 1997. The alleged offense occurred August 27, 2014, and both defendants were seventeen years old at the time. Mississippi Code Annotated section 43-21-151 (Rev. 2015) provides, in relevant part:

> (1) The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child except in the following circumstances:
>
>> (a) Any act attempted or committed by a child, which if committed by an adult would be punishable under state or

9

federal law by life imprisonment or death, will be in the original jurisdiction of the circuit court;

(b) Any act attempted or committed by a child with the use of a deadly weapon, the carrying of which concealed is prohibited by [s]ection 97-37-1, or a shotgun or a rifle, which would be a felony if committed by an adult, will be in the original jurisdiction of the circuit court[.]

¶18. The record reflects that Crews and Meadows were indicted for heat-of-passion manslaughter, a crime that does not carry a sentence of life imprisonment or death. Additionally, Meadows's and Crews's indicted offense did not involve a deadly weapon. As a result, Crews and Meadows submit, and the State agrees, that the exceptions to the youth court's exclusive original jurisdiction are not met.

¶19. At the time of the indictment, Meadows was eighteen years of age; however, youth-court jurisdiction attaches at the time of the offense, not the time of the indictment. Section 43-21-151(2) sets forth:

Jurisdiction of the child in the cause shall attach at the time of the offense and shall continue thereafter for that offense until the child's twentieth birthday, unless sooner terminated by order of the youth court. The youth court shall not have jurisdiction over offenses committed by a child on or after his eighteenth birthday.

As stated, the record reflects that both defendants were seventeen years old at the time of the offense.

¶20. Mississippi Code Annotated section 43-21-159(1) (Rev. 2015) provides:

When a person appears before a court other than the youth court, and it is determined that the person is a child under jurisdiction of the youth court, such court shall, unless the jurisdiction of the offense has been transferred to such court as provided in this chapter, or unless the child has previously been the subject of a transfer from the youth court to the circuit court for trial as an

10

adult and was convicted, immediately dismiss the proceeding without prejudice and forward all documents pertaining to the cause to the youth court[.]

We recognize that "[n]o child under the jurisdiction of the youth court shall be held criminally responsible or criminally prosecuted by any court for any act designated as a delinquent act, unless jurisdiction is transferred to another court under [s]ection 43-21-157." Miss. Code Ann. § 43-21-151(3).

¶21.    Mississippi Code Annotated section 43-21-157 (Rev. 2015) sets forth the procedure for the transfer of jurisdiction from the youth court to another court:

(1) If a child who has reached his thirteenth birthday is charged by petition to be a delinquent child, the youth court, either on motion of the youth court prosecutor or on the youth court's own motion, after a hearing as hereinafter provided, may, in its discretion, transfer jurisdiction of the alleged offense described in the petition or a lesser[-]included offense to the criminal court which would have trial jurisdiction of such offense if committed by an adult. The child shall be represented by counsel in transfer proceedings.

(2) A motion to transfer shall be filed on a day prior to the date set for the adjudicatory hearing but not more than ten (10) days after the filing of the petition. The youth court may order a transfer study at any time after the motion to transfer is filed.  The transfer study and any other social record which the youth court will consider at the transfer hearing shall be made available to the child's counsel prior to the hearing.  Summons shall be served in the same manner as other summons under this chapter with a copy of the motion to transfer and the petition attached thereto.

(3) The transfer hearing shall be bifurcated.  At the transfer hearing, the youth court shall first determine whether probable cause exists to believe that the child committed the alleged offense.  For the purpose of the transfer hearing only, the child may, with the assistance of counsel, waive the determination of probable cause.

(4) Upon such a finding of probable cause, the youth court may transfer jurisdiction of the alleged offense and the youth if the youth court finds by clear and convincing evidence that there are no reasonable prospects of

11

rehabilitation within the juvenile justice system.

¶22.   Upon our review, we find that a youth-court transfer order or transcript from a hearing on the matter does not appear in the record before us. "[T]he statutory youth court transfer procedure is comprehensive and must be followed.  The consequences of carving exceptions are far too grave."  *Buck v. State*, 838 So. 2d 256, 261 (¶13) (Miss. 2003).  The State concedes that the youth court herein failed to transfer the case to the circuit court as mandated by the statute, and requests that this Court remand the case to youth court for a determination as to whether the youth court would have transferred this case had it been properly brought before it.[4]  Alternatively, the State asks that the conviction be vacated and the case be remanded for further proceedings in the appropriate court.

---

[4] The State recognizes that although this particular situation has not yet been addressed in Mississippi, the Court of Criminal Appeals of Oklahoma faced a similar situation in *Gilley v. State*, 848 P.2d 578 (Okla. Crim. App. 1992).  There, a jury convicted Gilley of first-degree robbery. *Id*. at 579. At the time of the offense, Gilley was seventeen years old; however, because he was tried for robbery with a dangerous weapon, he was considered an adult under Oklahoma law. *Id*.  On appeal, Gilley argued that "error occurred because he was not informed of his right to make application for reverse certification as a child to the juvenile system" as provided under Oklahoma law. *Id*.  The Oklahoma Court of Criminal Appeals held that "[a]lthough we find that the appellant was not apprised of his right to apply for reverse certification procedure as was mandated by statute, this procedural error does not necessarily require reversal." *Id*. at 580.  Instead, the court analogized the situation in which a statutorily required postexamination competency hearing was erroneously not held. *Id*.  Thus, the court remanded the case back to the district court "so that a hearing can be held allowing appellant the opportunity to present whatever evidence he had or now has to support his position that if such a hearing had been held in the first instance, he would have been certified as a child." *Id*. *See also State in re Schreuder*, 649 P.2d 19, 25 (Utah 1982) (indicating that where the record in a postconviction criminal appeal establishes on its face that a juvenile court would certainly have transferred the case for adult prosecution, had it had the opportunity to properly consider the issue, an appellate court need not remand the matter for a reconstructed certification hearing, even where the certification process was erroneous).

12

¶23.     After our review of the record and relevant caselaw, we find that the youth court possesses exclusive original jurisdiction over this proceeding.  As a result, the circuit court lacked trial jurisdiction over this case since there was not a transfer of jurisdiction to the circuit court from the youth court as required by section 43-21-151.  We therefore reverse on the issue of jurisdiction, and we remand to the circuit court with instructions to vacate the convictions and sentences of Crews and Meadows and immediately dismiss the proceeding without prejudice and forward all documents pertaining to this cause to the Jones County Youth Court for further proceedings consistent with this opinion.  *See Buck*, 838 So. 2d at 260-61 (¶13).  In so doing, we also deny the State's request for alternative relief of a retroactive determination by the youth court as to whether the youth court would have transferred this case to the circuit court had the case been properly brought before it.  We find that the issue of jurisdiction is dispositive; hence, this Court will not address the remaining assignments of error raised herein.

¶24.     **THE JUDGMENTS OF THE JONES COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, ARE REVERSED, AND THESE CASES ARE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**